## Case No. 2,992.

COLGATE v. GOLD & STOCK TEL. CO.

[4 Ban. & A. 559;[1] 17 O. G. 193.]

Circuit Court, S. D. New York. Oct. 27, 1879.

ENJOINING INFRINGEMENT OF PATENT — ATTACHMENT FOR VIOLATION.

The defendant company had been enjoined against using the invention owned by the complainant, except the particular wires or cables then in use by it, and against "conferring upon any other person, persons or corporation, either in whole or in part, or alone, or in conjunction, or in connection with the defendant, any use of, or right to use any such wires or cables." Under an agreement made before the service of the injunction, the defendant company, after such service, furnished a wire containing the patented invention, such wire having been in use by the defendant long before, and at the time of the injunction. Held, that, upon these facts, the defendant was guilty of a violation of the injunction, and an attachment was granted against the defendant, and its president.

In equity. Bill by Clinton G. Colgate against the Gold & Stock Telegraph Company to enjoin infringement of letters patent No. 65,019, granted to George B. Simpson, May 21, 1867, for an improvement in insulating submarine cables. Complainant obtained a preliminary injunction (Case No. 2,991), and now moves for an attachment for violation of the injunction order.

F. H. Betts, for complainant.

E. N. Dickerson and G. W. Soren, for defendant.

BLATCHFORD, Circuit Judge. The injunction in this case was served on Norvin Green, as president of the defendant, on the 5th of August, 1879. This was service on the defendant and on Mr. Green as its agent. The injunction was served on the solicitors for the defendant on the same day. The terms of the injunction were, that the defendant refrain from using the patented in-

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

vention, except the identical wires and cables then used by it, "and also from selling, transferring, lending, leasing or parting with, in any manner, any wires or cables embodying said invention, or conferring upon any other person, persons or corporation, either in whole or in part, or alone, or in conjunction, or in connection with the defendant, any use of, or right to use any such wires or cables."

The defendant, on the 22d of August, 1879, made an agreement with J. A. Bostwick to furnish to him a telegraph wire running under the East river, and to maintain the same in good working order, at its own proper cost and expense, for one year, for a monthly rent of $12 for the wire and instruments. This agreement is signed "Norvin Green, by J. O. Green, president's secretary." Under this agreement, the defendant furnished a gutta-percha-covered wire, being one of several wires contained in a cable which had been in use by the defendant long before, and which was in actual use by it at the time of the service of the injunction. This agreement conferred on Bostwick the right to use such gutta-percha-covered cable, and was a violation of the injunction. The fact that the defendant had before used and was using such cable is of no consequence. It could continue to use it, but it could not confer on any other person such a right to use it as was conferred by this agreement, without violating the injunction. For such violation an attachment must issue against the defendant and Norvin Green.

The wire furnished the Pioneer Tobacco Company under the agreement of September 10th, 1879, signed by Norvin Green, was not a gutta-percha-insulated wire. It is not shown that the agreement was for a gutta-percha-insulated wire.

The wire furnished the Brooklyn White Lead Company under the agreement of September 10th, 1879, signed by George B. Prescott, as vice-president of the defendant, was a gutta-percha-insulated wire. The agreement was in form like that with Bostwick. The observations before made, in regard to the case of Bostwick, apply to this case, and an attachment must issue against the defendant, and Mr. Prescott.

The agreements with J. G. Bennett and McAlden Brothers and the Export Lumber Company were before the service of the injunction. The wire furnished McAlden Brothers was not a gutta-percha-insulated wire. The wire furnished to the Export Lumber Company, though a gutta-percha-covered wire, was furnished before the service of the injunction. In the case of J. G. Bennett, I am not able to discover any violation of the injunction.

In the case of the Calvary Cemetery, the agreement being before the service of the injunction, and, in form, like that with Bostwick, I suppose the giving to the cemetery on the 23d of August, 1879, under the agree-

ment, the use of a gutta-percha-covered cable, was a violation of the injunction, for which an attachment must issue against the defendant. The same facts exist and the same decision is made in the case of the Woodlawn Cemetery, and in the case of J. G. Bennett, No. 2.

In the case of the Ansonia Clock Company, there was no violation of the injunction, as the agreement was made and the gutta-percha cable service was commenced before the service of the injunction.

In the case of the Manhattan Chemical Company, there was a violation of the injunction, for which an attachment must issue against the defendant, for, although the agreement was made before the service of the injunction, the gutta-percha cable was furnished afterward. The above comprise, I believe, all the cases presented to my notice.

[NOTE. For other cases involving this patent, see note to Colgate v. Western Union Tel. Co., Case No. 2,995.]